1          **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3       **HONORABLE OTIS D. WRIGHT, II, U.S. DISTRICT JUDGE**

4

5    UNITED STATES OF AMERICA,            )
                                          )
6                     Plaintiff,          )   <u>**CERTIFIED TRANSCRIPT**</u>
                                          )
7          vs.                            )
                                          )   Case No.
8    ISRAEL SANCHEZ,                      )   2:18-cr-00553-ODW-1
                                          )
9                     Defendant.          )
     ─────────────────────────────────────)

10

11

12

13              REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                     CHANGE OF PLEA

15          **REPORTED VIA VIDEO TELECONFERENCING**

16               MONDAY, DECEMBER 7, 2020

17                     8:06 A.M.

18               LOS ANGELES, CALIFORNIA

19

20

21

22

23   ─────────────────────────────────────────────────────

24          **DEBBIE HINO-SPAAN, CSR 7953, CRR**
          FEDERAL OFFICIAL COURT REPORTER
          411 WEST 4TH STREET, ROOM 1-053
25             SANTA ANA, CA 92701
               dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4            NICOLA T. HANNA
             United States Attorney
5            BY:  JOSEPH TIMOTHY McNALLY
                  Assistant United States Attorney
6            312 North Spring Street
             Los Angeles, California 90012
7            213-894-3713
             joseph.mcnally@usdoj.gov
8

     **FOR THE DEFENDANT:**
9
             CUAUHTÉMOC ORTEGA, FEDERAL PUBLIC DEFENDER
10           BY:  CALLIE GLANTON STEELE
                  Deputy Federal Public Defender
11           321 East 2nd Street
             Los Angeles, California 90012-4206
12           213-894-6075
             Callie_Steele@fd.org
13

     **ALSO PRESENT:**
14
             JILL HOSKINS, Spanish-language interpreter
15

16

17

18

19

20

21

22

23

24

25

**LOS ANGELES, CALIFORNIA; MONDAY, DECEMBER 7, 2020**

**8:06 A.M.**

**- - -**

THE COURTROOM DEPUTY:  Calling Item 1, CR 18-553, *United States of America vs. Israel Sanchez*.

Counsel, may I have your appearances, please.

MR. McNALLY:  Good morning, Your Honor.  Joe McNally on behalf of the United States.

THE COURT:  Mr. McNally.

MS. GLANTON STEELE:  Good morning, Your Honor. Callie Glanton Steele appearing on behalf of Mr. Sanchez, who is present and being assisted by a Spanish-language interpreter.

THE COURT:  Ms. Glanton Steele and Mr. Sanchez, good morning.

All right.  We're going to do a redo of the change of plea hearing.  And I'm not going to go into all the machinations that have gone on before which has brought us back to the position where we're doing another change of plea hearing.  All right?  We've gone through much of this before.

Mr. Sanchez, I'm going to briefly go over some of the ground rules again.  And I apologize if this is repetitious, but in a few moments we're going to have you placed under oath because I'm going to be asking you a series of questions to which I will require an honest answer.  If it's

1    later determined that you have been willfully false in any of

2    your answers to the Court's questions, that may subject you to

3    a future prosecution for perjury or for making a false

4    statement.

08:08AM 5           THE DEFENDANT:  Okay.

6           THE COURT:  All right.  Once again, we are going to

7    be utilizing the written plea agreement entered into between

8    you and the government and filed with the Court on October 7 of

9    2019.  That agreement will be incorporated and made a part of

08:08AM 10   these proceedings.

11          First of all, sir, are you willing to give up your

12   right to remain silent for the purposes of this hearing only so

13   that you may answer the Court's questions?

14          THE DEFENDANT:  Yes.

08:08AM 15          THE COURT:  All right.  Does counsel join in that

16   waiver?

17          MS. GLANTON STEELE:  Yes, Your Honor.

18          THE COURT:  Once again, some of the ground rules.

19   Like I indicated, I will be asking you a series of questions.

08:08AM 20   So I'm just going to be making a number of statements to you.

21   But with respect to the questions, please do not attempt to

22   answer any questions that you don't understand.  If you answer

23   my question, it will be assumed that you understood the

24   question.  So if something is unclear to you, please interrupt

08:09AM 25   me, and I will attempt to make it clear for you.

1          Also, if at any time you wish to confer with your

2   attorney, just let me know and we will make arrangements here

3   for you to be able to speak with your attorney confidentially.

4   All right?

08:09AM 5          THE DEFENDANT:  Okay.  Okay.

6          THE COURT:  And like I said, we've gone through this

7   entire process before.  If you have any questions of me

8   regarding this hearing and the procedures that we're going to

9   go through, now would be the time to ask those questions.

08:10AM 10          Do you have any questions?

11          THE DEFENDANT:  No.  Not right now.

12          THE COURT:  All right.  Sheila?

13          THE COURTROOM DEPUTY:  Yes.

14          THE COURT:  Go ahead and administer the oath.

08:10AM 15          THE COURTROOM DEPUTY:  Okay.

16          **(The defendant was sworn.)**

17          THE COURTROOM DEPUTY:  Thank you.

18          THE COURT:  All right, sir.  State your true and

19   correct name, please.

08:11AM 20          THE DEFENDANT:  Israel Sanchez Mattas.

21          THE COURT:  All right.  And how old are you, sir?

22          THE DEFENDANT:  54.

23          THE COURT:  And have you been treated recently for

24   any mental illness or addiction to narcotics?

08:11AM 25          THE DEFENDANT:  No.

1          THE COURT:  Are you presently under the influence of

2     any drug, medication, or alcoholic beverage of any kind?

3          THE DEFENDANT:  No.

4          THE COURT:  Have you had any drugs, medication, or

08:11AM  5     alcohol within the last 24 hours?

6          THE DEFENDANT:  No.

7          THE COURT:  Have you been prescribed any medication

8     which you have not taken?

9          THE DEFENDANT:  No.

08:12AM  10         THE COURT:  Do you suffer from any mental condition

11    or disability that would prevent you from understanding the

12    charge against you or the consequences of your guilty plea?

13         THE DEFENDANT:  No.

14         THE COURT:  Are you aware of any reason why we

08:12AM  15    should not go forward today and take your plea?

16         THE DEFENDANT:  Could you please repeat the

17    question.

18         THE COURT:  Are you aware of any reason why we

19    should not go forward this morning and take your plea?

08:12AM  20         THE DEFENDANT:  Oh, no.

21         THE COURT:  All right.  Ms. Glanton Steele, have you

22    had an opportunity to speak with your client about these

23    proceedings?

24         MS. GLANTON STEELE:  Yes, Your Honor.

08:13AM  25         THE COURT:  Do you have any reason to believe that

```
 1   your client should not go forward with this plea today?

 2              MS. GLANTON STEELE:  No, Your Honor.

 3              THE COURT:  And do you believe that he is in

 4   possession of his faculties and is competent to proceed?

 5              MS. GLANTON STEELE:  Yes, Your Honor.

 6              THE COURT:  Based upon the statements of the

 7   defendant and his counsel as well as my own observations, I

 8   find that the defendant is in full possession of his faculties

 9   and is mentally competent to proceed.

10              All right, sir, you are -- well, have you received a

11   copy of the Indictment in this case?

12              THE DEFENDANT:  Yes.

13              (Audio distortion.)

14              THE COURT:  There was a lot of shuffling.  Was there

15   an answer?

16              THE DEFENDANT:  Yes.

17              THE COURT:  All right.  Thank you.

18              You have the right to have that Indictment read to

19   you at this time.  Do you wish to have it read to you, or do

20   you give up that right?

21              THE DEFENDANT:  No, it's not necessary.

22              THE COURT:  All right.  You also have the following

23   constitutional rights, and these are rights that you would be

24   giving up by pleading guilty.  First, you have the right to

25   plead not guilty to any offense charged against you and to
```

1    persist in that plea.  You have the right to a speedy and

2    public trial.  You have the right to a trial by jury.  At

3    trial, you would be presumed to be innocent, and the

4    government would have to prove your guilt beyond a reasonable

08:15AM  5    doubt.  If both you and the government give up your right to a

6    jury trial, you have the right to be tried by the Court.

7          You have the right to the assistance of counsel for

8    your defense throughout the proceedings.  If you cannot afford

9    counsel, the Court will appoint counsel to represent you free

08:15AM 10   of charge at trial and at every other stage of the proceedings.

11   You have the right to confront and cross-examine the witnesses

12   against you, that is, to see and hear all the witnesses testify

13   and be questioned by the lawyers.

14         You have the right to have witnesses subpoenaed and

08:16AM 15   compelled to come into court to testify on your behalf.  You

16   have the right to testify yourself on your own behalf.  You

17   have the privilege against self-incrimination; that is, you

18   have the right not to testify or incriminate yourself in any

19   way.  If you went to trial and decided not to testify, that

08:16AM 20   fact could not be used against you.  By pleading guilty, you

21   are giving up that right, and you are incriminating yourself.

22   Lastly, you have the right to appeal your conviction and your

23   sentence if you went to trial and were convicted.

24         Now, have you been advised of all of these rights?

08:17AM 25         THE DEFENDANT:  Yes.

```
 1              THE COURT:  Do you recall that, when your plea

 2    agreement was read to you, that these same rights were covered

 3    in the plea agreement?

 4              THE DEFENDANT:  Yes.

 5              THE COURT:  Do you have any questions about your

 6    constitutional rights?

 7              THE DEFENDANT:  Not now.

 8              THE COURT:  All right.  Do you need to talk to your

 9    lawyer about your constitutional rights?

10              THE DEFENDANT:  Not now.

11              THE COURT:  Do you understand that, if your plea is

12    accepted, you will be incriminating yourself and you have given

13    up the right to a trial and all of the other rights that I've

14    just described?

15              Do you understand that?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Do you give up those rights?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Ms. Glanton Steele, are you satisfied

20    that each of these waivers is knowingly, voluntarily, and

21    intelligently made?

22              MS. GLANTON STEELE:  Yes, Your Honor.

23              THE COURT:  And do you join and concur in each of

24    the waivers?

25              MS. GLANTON STEELE:  Yes, Your Honor.
```

THE COURT:  All right, sir.  You're charged in
Count Three of the Indictment with violation of Title 18,
United States Code, Section 2251(a), production of child
pornography.  At this time, I am going to ask the prosecutor to
state the elements of the charge.

All right.  Mr. McNally?

MR. McNALLY:  Yes, Your Honor.  The government would
have to prove the following beyond a reasonable doubt:  First,
at the time of the offense, the victim was under the age of 18;
second, defendant used the victim to take part in sexually
explicit conduct for the purpose of producing a visual
depiction of such conduct; and the visual depiction was
produced using materials that have been mailed, shipped, or
transported across state lines or in foreign commerce.

THE COURT:  All right.  Do you have any questions
about the elements that the government would have to prove
beyond a reasonable doubt in order to secure your conviction on
Count Three, sir?

THE DEFENDANT:  No.  But just that the videos were
never sent anywhere.

MS. GLANTON STEELE:  Your Honor, may I have a moment
to confer with my client?

THE COURT:  Please.

THE INTERPRETER:  Okay.  The interpreter is going to
have a private conversation.  One moment.

```
  1              (Counsel and defendant conferred off the record

  2               with the interpreter.)

  3              MS. GLANTON STEELE:  Thank you, Your Honor.  We're

  4    ready to proceed.

08:22AM 5        THE COURT:  All right.  Once again, sir, do you

  6    understand what the prosecutor just said and what the

  7    government will prove on Count Three?

  8              THE DEFENDANT:  Yes.  Yes.  Yes, I understand.

  9              THE COURT:  All right.  Okay.  And have you been

08:22AM 10   advised of the various penalties that you face?

  11             THE DEFENDANT:  Yes.

  12             THE COURT:  All right.  Once again, even though

  13   these matters are covered in the plea agreement, I want the

  14   prosecutor to go over these penalties that you face including

08:23AM 15   the maximum prison term which could be imposed, any mandatory

  16   minimum term that the Court must impose, the maximum fine which

  17   could be levied against you, the special assessment which I

  18   must levy against you, the concept of supervised release, and

  19   the various collateral consequences which result from suffering

08:23AM 20   a felony conviction.

  21             Are you a United States citizen, sir?

  22             THE DEFENDANT:  No.

  23             THE COURT:  All right.  We will also then discuss

  24   the immigration consequences.

08:24AM 25             All right.  Mr. McNally?
```

1          MR. McNALLY:  The statutory maximum sentence that

2     the Court may impose for a violation of Title 18, United States

3     Code, Section 2251(a) is 30 years' imprisonment; a lifetime

4     period of supervised release; a $250,000 fine or twice the

08:24AM  5     gross loss -- gross gain or gross loss resulting from the

6     offense, whichever is greatest; and a mandatory special

7     assessment of $100.

8          Defendant further understands that the statutory

9     mandatory minimum sentence that the Court must impose for the

08:25AM 10     offense is 15 years' imprisonment and a $100 special

11     assessment.

12          Defendant understands that pursuant to the

13     Justice for Victims of Trafficking Act of 2015, the Court must

14     impose an additional $5,000 special assessment, if the Court

08:25AM 15     concludes that defendant is a nonindigent person, to be paid

16     after defendant's other financial obligations have been

17     satisfied.

18          Does the Court want me to read the supervised

19     release provisions as well?

08:25AM 20          THE COURT:  Yes.

21          MR. McNALLY:  Defendant also understands that

22     supervised release is a period of time following imprisonment

23     during which defendant will be suffering various restrictions

24     and requirements.  Defendant understands that, if defendant

08:25AM 25     violates one or more of the conditions of any supervised

release imposed, defendant may be returned to prison for all or
part of the supervised release authorized by statute for which
the -- for the offense that results in the term of supervised
release --

08:26AM        THE COURT:  Let me -- let me interrupt you one
second.  There's an awful lot of background noise.  So if
you're not speaking, would you please mute your microphones.

        Go ahead, sir.

        MR. McNALLY:  Defendant may be returned to prison
08:26AM for all or part of the term of supervised release authorized by
statute for the offense that results in the term of supervised
release, which could result in defendant serving a term of
imprisonment greater than the statutory maximum stated.

        Defendant also understands that, as a condition of
08:26AM supervised release, defendant will be required to register as a
sex offender.  Defendant understands that, independent of
supervised release, he will be subject to federal and state
registration requirements for a possible maximum term of
registration up to and including life.

08:27AM        Defendant further understands that, under 18 U.S.C.
Section 4042(c), notice will be provided to certain law
enforcement agencies after his release from custody following
conviction.

        The restitution provisions, Your Honor, do you want
08:27AM me to read those as well?

THE COURT:  You've covered the $5,000 -- if you believe that -- if you believe that we will have evidence that will support a restitution order pertaining to these particular victims, then go ahead.

08:27AM     MR. McNALLY:  Yeah, I think it's best to include it.

Defendant understands and agrees that, pursuant to 18 U.S.C. Section 2259, defendant will be required to pay full restitution to victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the U.S. Attorney's Office's compliance with its obligation under the plea agreement, the Court may order restitution to persons other than the victim's statement of the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of the following for losses suffered as a result:  Any relevant conduct as defined by Section 1B1.3 of the Sentencing Guidelines in connection with the offense to which defendant is pleading guilty; any counts dismissed pursuant to the plea agreement as well as relevant conduct as defined by Section 1B1.3 of the plea agreement in connection with those counts.

THE COURT:  All right.  Thank you.

All right, sir, do you have any questions about anything the prosecutor has just said?

THE DEFENDANT:  No.  Not now.

08:29AM     THE COURT:  All right.  You should understand that

1  the rule has been abolished in the federal system and, if you

2  are sentenced to prison, you will not be released on parole.

3  Is that clear?

4          THE DEFENDANT:  Yes.

08:29AM 5          THE COURT:  Do you feel that you've understood

6  everything that's been said so far?

7          THE DEFENDANT:  Yes.  Yes, I understand.

8          THE COURT:  Any reason why I should not continue and

9  continue with your plea?

08:29AM 10          THE DEFENDANT:  No.

11          THE COURT:  All right, sir.  You will be sentenced

12  under the Sentencing Reform Act of 1983.  The United States

13  sentencing committee has issued guidelines which judges must

14  consult and take into account but are not required to follow in

08:30AM 15  determining the sentence in a criminal case.

16          Now, have you and your lawyer talked about how the

17  Sentencing Guidelines might be applied in your case?

18          THE DEFENDANT:  Yes.

19          THE COURT:  You should understand that neither the

08:30AM 20  Court nor your lawyer will be able to determine the Guidelines

21  range for your case until after the Presentence Report has been

22  prepared by the Probation Office.  Now, in this particular

23  case, that report has been prepared.

24          You should also understand that, now that the report

08:31AM 25  has been prepared and the parties have had an opportunity to

1   review that report, the parties will have occasion to argue the

2   report that facts in addition to those set forth in the

3   Presentence Report should be considered by the Court in

4   determining the appropriate sentence in your case.  And,

08:31AM  5   naturally, you will have an opportunity to speak to that issue

6   at the time of sentencing.

7          Now, there is a certain level of uncertainty

8   involved here because no one, including the Court, knows

9   precisely what the sentence will be in this case.  But neither

08:31AM 10   this uncertainty nor any disappointment you may feel over the

11   Guidelines range for your case nor the Court's eventual

12   sentence will be a basis for you to withdraw your guilty plea.

13          Is that clear?

14          MR. McNALLY:  Your Honor, may I be heard, please?

08:32AM 15          THE COURT:  Yes.

16          MR. McNALLY:  Your Honor, it's an 11(c)(1)(C) --

17          THE COURT:  Yes.

18          MR. McNALLY:  -- with a range from 15 to 20 years.

19   And maybe I misheard the Court, but, obviously, if he's

08:32AM 20   sentenced outside of that range he could recall.

21          THE COURT:  We have been down this road.  In fact,

22   that's what brings us here today.  That's why we are still

23   doing this many, many months after his original change of plea.

24   The Court indicated on more than one occasion the Court does

08:32AM 25   not accept the plea agreement.

1    Mr. Sanchez, is there still any doubt in your mind

2 about that, that you have entered into what's known as a

3 binding plea agreement with the government?  And if the Court

4 accepts that agreement, the Court is bound to sentence you in

08:32AM 5 accordance with the terms of that agreement.  The Court has

6 indicated that it does not accept that agreement.

7    Do you recall that?

8    MS. GLANTON STEELE:  Your Honor, this is a new

9 agreement.

08:33AM 10    THE DEFENDANT:  Yes.  Yes.  I understand.

11    THE COURT:  Okay.  Wait a minute.  Wait.  Wait.

12 Wait.  Wait.  There has been a new plea agreement?

13    MS. GLANTON STEELE:  Yes, Your Honor.

14    MR. McNALLY:  It's a different agreement than last

08:33AM 15 time.  The last agreement was a binding agreement to 15 years.

16 This is a range -- binding range of 15 to 20 years'

17 imprisonment.

18    THE COURT:  I haven't seen that.  One of the

19 problems, I guess, of not coming in here every day.  All right.

08:33AM 20 Well, here we go again.  We're going to have to stop.

21    Is the new plea agreement also an 11(c)(1)(C)?

22    MR. McNALLY:  It's an 11(c)(1)(C) for 15 to 20

23 years.  The prior agreement was 11(c)(1)(C) for 15 years.

24    THE COURT:  Hang on.  Maybe this is still doable.

08:34AM 25    MR. McNALLY:  I'm happy to e-mail it to the Court

**UNITED STATES DISTRICT COURT**

1    right now if it doesn't have it in front of it.

2           THE COURT:  No, I don't have it.  But if that is the

3    only thing that has changed, I suppose we can proceed.

4           The Court is simply not going to make a commitment

08:35AM  5    at this time as to whether or not it is going to accept the

6    agreement.  And if that's all right with everyone, then we will

7    continue.

8           MR. McNALLY:  Understood.  That's fine with the

9    government.  And the only material change is the 15 to 20 years

08:35AM 10    and that, also, that the appellate waiver tracks that as well.

11    So it's changed from 15 years to the binding 15 to 20.

12           And the government's fine with the Court proceeding

13    without accepting at this point.

14           THE COURT:  Ms. Glanton Steele, are you okay with

08:35AM 15    that?

16           MS. GLANTON STEELE:  Yes, Your Honor.

17           THE COURT:  Okay.  I'll tell you what we'll do,

18    Mr. McNally.  When I begin discussing his appellate rights, I'm

19    going to have you cover that, because I'm not certain that what

08:36AM 20    I have before me is reflected in the new plea agreement.  Okay?

21           MR. McNALLY:  Very well.

22           THE COURT:  All right.  All right.  Then I am not

23    certain whether or not the pagination has been changed very

24    much, but I would, sir, like to discuss the signature pages on

08:36AM 25    this agreement.  It can very well -- do you have the agreement

```
 1    with you, Mr. Sanchez?
 2             MS. GLANTON STEELE:  No, Your Honor.  He can't have
 3    the agreement with him because, if someone finds it, it would
 4    put his life in danger.  So it was read to him in Spanish.
 5             THE COURT:  Okay.  Then let me just do it this way.
 6             Mr. Sanchez, the agreement was read to you in
 7    Spanish by a Spanish-language interpreter; correct?
 8             THE DEFENDANT:  Yes.  That's right.
 9             THE COURT:  And after the agreement was read to you,
10    did you sign the agreement?
11             THE DEFENDANT:  Yes.
12             THE COURT:  And do you recall signing two pages of
13    the agreement?
14             THE DEFENDANT:  Yes, I remember that.
15             THE COURT:  Okay.  Do you feel that --
16             MR. McNALLY:  Your Honor, may I?
17             THE COURT:  Yes.
18             MR. McNALLY:  You know, I think, just for the
19    record, Mr. Sanchez signed the first agreement.  With respect
20    to the second agreement, the signature is Ms. Steele's
21    signature, and it states "Callie Glanton Steele on behalf of
22    Mr. Sanchez" on November 12th, 2020.  And I think Mr. Sanchez
23    can confirm on the record that he authorized Ms. Steele to do
24    that in light of, you know, the pandemic, and that he reviewed
25    the agreement with both Ms. Steele and the Spanish-language
```

1    interpreter.

2              THE COURT:  Thank you.

3              All right.  Mr. Sanchez, do you agree with what the

4    prosecutor just said?

08:38AM 5              THE DEFENDANT:  Yes.

6              THE COURT:  And you did authorize your attorney to

7    sign the agreement -- the second agreement on your behalf?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And it is your opinion that the written

08:38AM 10   agreement accurately represents the understanding that you have

11   with the government?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  Has anyone made you any

14   promises, representations, or guarantees of any kind in an

08:39AM 15   effort to get you to plead guilty in this case other than what

16   is contained in the written plea agreement?

17             THE DEFENDANT:  No.

18             THE COURT:  Other than what is contained in the

19   written plea agreement and other than a general discussion of

08:39AM 20   the guidelines sentencing range with your attorney, has anyone

21   made you any promises of leniency, a particular sentence,

22   probation, or any other inducement of any kind in an effort to

23   get you to plead guilty?

24             THE DEFENDANT:  No.

08:39AM 25             THE COURT:  Has anyone told you that the Court will

```
 1    impose any specific sentence in the event your guilty plea is

 2    accepted?

 3                    THE DEFENDANT:  No.

 4                    THE COURT:  Has anyone attempted in any way to

 5    threaten you, a family member, or anyone close to you in an

 6    effort to get you to plead guilty in this case?

 7                    THE DEFENDANT:  No.

 8                    THE COURT:  All right.  Thank you.  At this point,

 9    I'd like to discuss the appellate rights, the waiver of those

10    rights.  And normally there is a paragraph that discusses a

11    waiver of your right to appeal your conviction, as is normally

12    the course.  You are giving up your right to appeal your

13    conviction on any ground other than what you're doing here this

14    morning, that is, pleading guilty.  It's not voluntary on your

15    part, that you are acting either under duress or coercion or

16    some other factor or situation which has nullified the exercise

17    of your free will.

18                    In addition, that paragraph normally contains a

19    provision indicating that you are also giving up your right to

20    argue that the statute that is reflected in Count Three of the

21    Indictment is unconstitutional.  You will not be able to make

22    that argument.

23                    And the third provision which is normally contained

24    in the waiver of appeal of conviction paragraph is that you are

25    giving up your right to argue that the statement of facts
```

1    contained in the plea agreement is insufficient to support your

2    plea of guilty.

3              Do you understand that, sir?

4              THE DEFENDANT:  Yes, I understand.

08:42AM 5      THE COURT:  All right.  And if there is something in

6    addition to those provisions contained in the revised plea

7    agreement, Mr. McNally, please chime in.

8              MR. McNALLY:  In addition to the waivers that the

9    Court just referenced, there is a limited mutual waiver of

08:43AM 10   appeal of sentence, and that is that the defendant agrees that,

11   provided the Court imposes the sentence specified in

12   paragraph 17 of the plea agreement -- and that sentence is a

13   sentence between 50- -- 15 and 20 years' imprisonment -- that

14   defendant gives up the right to appeal the Court's sentence.

08:43AM 15   Defendant also gives up the right to appeal the restitution

16   order here.

17             THE COURT:  All right.  Excellent.

18             Is that your understanding of the terms of the

19   agreement as it pertains to your right to appeal your sentence,

08:43AM 20   sir?

21             THE DEFENDANT:  Yes.  Yes.

22             THE COURT:  All right.  Good.

23             Ms. Glanton Steele, normally, I would ask questions

24   about your signature on the agreement, but that's not practical

08:44AM 25   now.  But did you discuss the contents of the new agreement

1     with your client?

2            MS. GLANTON STEELE:  Yes, I did, Your Honor.

3            THE COURT:  And the new agreement reflects the

4     entire understanding -- current understanding that you had with

08:44AM 5     the government?

6            MS. GLANTON STEELE:  Yes, Your Honor.

7            THE COURT:  And did you review the facts of this

8     case and the discovery provided by the government?

9            MS. GLANTON STEELE:  Yes, Your Honor.

08:44AM 10            THE COURT:  And you reviewed those facts and

11     discovery with your client?

12            MS. GLANTON STEELE:  I did, Your Honor.

13            THE COURT:  And you've pursued with your client the

14     potential defenses he might have?

08:44AM 15            MS. GLANTON STEELE:  Yes, I did, Your Honor.

16            THE COURT:  And have you advised your client

17     concerning the legality or admissibility of any statements or

18     confessions or other evidence that the government has against

19     him?

08:44AM 20            MS. GLANTON STEELE:  Yes, Your Honor.

21            THE COURT:  And to the best of your knowledge, is

22     your client pleading guilty because of any illegally obtained

23     evidence in the possession of the government?

24            THE DEFENDANT:  Not to my knowledge.

08:45AM 25            THE COURT:  And did you and your client agree that

1    it was in his best interest to enter this plea?

2              MS. GLANTON STEELE:  Yes, Your Honor.

3              THE COURT:  Is it your opinion that your client is

4    entering into this plea freely and voluntarily with full

08:45AM  5    knowledge of the charge against him and the consequences of his

6    plea?

7              MS. GLANTON STEELE:  Yes, Your Honor.

8              THE COURT:  Have there been any promises,

9    representations, or guarantees made either to you or to your

08:45AM 10    client other than what is contained in the written plea

11    agreement and what has been stated here in open court?

12              MS. GLANTON STEELE:  No, Your Honor.

13              THE COURT:  Other than what is contained in the

14    written plea agreement, and other than what is stated here in

08:45AM 15    open court, and other than a general discussion of the

16    guidelines of sentencing range and other sentencing

17    considerations, have you given any indication of what specific

18    sentence the Court would impose or conveyed to your client any

19    promise of a particular sentence in the event the Court accepts

08:46AM 20    his plea of guilty?

21              MS. GLANTON STEELE:  No, Your Honor.

22              THE COURT:  Do you know of any reason why the Court

23    should not accept your client's plea?

24              MS. GLANTON STEELE:  No, Your Honor.

08:46AM 25              THE COURT:  And do you join in the waiver of jury

```
 1    trial and concur in the plea?
 2                MS. GLANTON STEELE:  Yes, Your Honor.
 3                THE COURT:  And, Mr. McNally, other than what is
 4    expressly contained in the written plea agreement and what has
 5    been stated here in open court, has the government made any
 6    promises, representations, or guarantees either to the
 7    defendant or to defense counsel?
 8                MR. McNALLY:  No, it has not, Your Honor.
 9                THE COURT:  And does the government waive jury
10    trial?
11                MR. McNALLY:  Yes, it does.
12                THE COURT:  Thank you.
13                Mr. Sanchez, are you satisfied with the
14    representation your lawyer has provided?
15                THE DEFENDANT:  Yes.
16                THE COURT:  And have you told your lawyer everything
17    you know about your case, especially about any statements or
18    confessions or other evidence you know about that the
19    government has against you?
20                THE DEFENDANT:  Yes.
21                THE COURT:  Do you believe that your lawyer has
22    fully considered any reasonable defense you may have to the
23    charge?
24                THE DEFENDANT:  Yes.
25                THE COURT:  Do you believe that you've had enough
```

**UNITED STATES DISTRICT COURT**

```
 1    time to discuss this matter with your lawyer?

 2             THE DEFENDANT:  Yes.

 3             THE COURT:  And do you believe your lawyer has fully

 4    advised you concerning this matter?

 5             THE DEFENDANT:  Yes.

 6             THE COURT:  Do you believe that you understood

 7    everything that has happened here this morning including

 8    everything that has been said by the Court and by the lawyers?

 9             THE DEFENDANT:  Yes.

10             THE COURT:  Do you believe you understand the

11    consequences to you of this decision to plead guilty?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you know of any reason why the Court

14    should not accept your plea of guilty?

15             THE DEFENDANT:  No.

16             THE COURT:  Do you understand, then, that all that

17    is left in your case, if I accept your plea of guilty, is the

18    imposition of sentence which will include imprisonment?

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Mr. Sanchez, having in mind all that we

22    have discussed regarding your plea of guilty, the rights that

23    you will be giving up, the maximum sentence you could receive,

24    the mandatory minimum sentence you must receive, is it still

25    your desire to plead guilty?
```

08:47AM (line 5)
08:48AM (line 10)
08:48AM (line 15)
08:48AM (line 20)
08:49AM (line 25)

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right, sir.  Would you listen

3    carefully.  I'm going to ask the prosecutor to state the facts

4    that the government would be prepared to prove at trial, and

08:49AM 5    then I'm going to ask you some questions about what he is about

6    to say.

7          All right.  Mr. McNally.

8          MR. McNALLY:  Yes, Your Honor.  Before I do that, I

9    think the Court started to discuss this provision and it never

08:49AM 10   did.  Mr. Sanchez does not have lawful status in the

11   United States, which means that, you know, with this

12   conviction, it's a virtual certainty that he will be deported

13   following service of the sentence imposed.  The Court

14   previously advised Mr. Sanchez of that at the last change of

08:50AM 15   plea, but I want to do so again and confirm that he still

16   wishes to proceed in light of that fact.

17         THE COURT:  All right.  Mr. Sanchez, earlier when

18   the prosecutor discussed the immigration consequences to you of

19   being convicted of a felony, I will admit I don't recall his

08:50AM 20   precise words, but you should be advised that it is almost a

21   certainty that, if you are not a United States citizen, that it

22   is likely that you will be deported from this country once you

23   have served your sentence.

24         Do you understand?

08:50AM 25         THE DEFENDANT:  Yes.  Yes, I understand it.

1          THE COURT:  Okay.  And with that understanding, is

2   it still your desire to go forward with this guilty plea?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  Does anyone else wish the

08:51AM  5   Court to make any further comments, advice, or inquiry before

6   we proceed any further?  Mr. McNally?

7          MR. McNALLY:  No, Your Honor.

8          THE COURT:  Ms. Glanton Steele?

9          MS. GLANTON STEELE:  No, Your Honor.

08:51AM 10          THE COURT:  All right.  Mr. McNally, go ahead and

11   state the facts that the government would be prepared to prove

12   in the event this matter proceeded to trial.

13          MR. McNALLY:  The government would prove that,

14   during April 9th and 10th, 2013, law enforcement used Ares, a

08:51AM 15   peer-to-peer file-sharing software, to download child

16   pornography that defendant was sharing over the internet.  On

17   August 20th, 2013, law enforcement executed a federal search

18   warrant at defendant's residence, and defendant possessed over

19   1,000 images of child pornography, including videos of child

08:52AM 20   pornography that defendant produced.

21          In addition, defendant produced videos of seven

22   minors, including minors who he had access to through his

23   mother's daycare, center engaging in sexually explicit conduct.

24   Defendant videotaped himself fondling and performing oral sex

08:52AM 25   on these victims.  For example, defendant produced videos

        1    titled "VID" and the file number referenced in the plea

        2    agreement that ends in 814 and "VID" file ending in 807.

        3            File ending in 814 depicts Victim M.'s genital area

        4    and defendant's hand partially pulling down her navy-and-white

08:53AM 5    floral panties.  Victim M was approximately six to eight years

        6    old at the time of the offense.

        7            Video ending in 807 is a continuation of the one

        8    ending in 814.  It depicts defendant and Victim M lying on

        9    defendant's couch.  In the video, defendant pulls aside

08:53AM 10   Victim M.'s navy-and-white floral panties to display her vagina

        11   to the camera, then inserts his hand into the frame and touches

        12   her vagina.

        13           Defendant produced this and other videos at his

        14   residence in Sylmar, California.  Defendant produced the videos

08:53AM 15   using materials that have been shipped, mailed, transported in

        16   or affecting interstate and foreign commerce.

        17           THE COURT:  All right.  Mr. Sanchez, do you

        18   understand everything the prosecutor just said?

        19           THE DEFENDANT:  Yes.

08:54AM 20           THE COURT:  Is everything he said about you and your

        21   conduct true and correct?

        22           THE DEFENDANT:  Yes.

        23           THE COURT:  Are you pleading guilty because you did

        24   the things charged in the Indictment?

08:54AM 25           THE DEFENDANT:  Yes.

```
 1              THE COURT:  Are you pleading guilty because you are
 2    guilty?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  Does either counsel wish the Court to
 5    make any further inquiry in terms of compliance with the
 6    requirements of Rule 11(b)?
 7              Mr. McNally?
 8              MR. McNALLY:  No, Your Honor.
 9              THE COURT:  Ms. Glanton Steele?
10              MS. GLANTON STEELE:  No, Your Honor.
11              THE COURT:  Thank you, Counsel.
12              In the matter of the United States of America vs.
13    Israel Sanchez, Case Number CR 18-00553, how do you plead to
14    Count Three of the Indictment, charging a violation of
15    Title 18, United States Code, Section 2251(a), production of
16    child pornography?
17              THE DEFENDANT:  Guilty.
18              THE COURT:  All right, Mr. Sanchez, I'm going to
19    make certain findings.  If you don't understand what I say or
20    if you disagree with what I say, please interrupt me right
21    away.
22              In the matter of the United States vs. Israel
23    Sanchez, the Court having questioned the defendant and his
24    counsel on the offer of his plea of guilty to Count Three of
25    the Indictment, a felony, the defendant and his counsel having
```

advised the Court that they have conferred concerning the offer

of plea of guilty and all aspects of the charge against him as

well as any defenses he may have, and the Court having observed

the defendant's intelligence, demeanor, and attitude while

08:56AM 5  answering questions, and the Court having observed that the

defendant does not appear to be under the influence of any

medicine, drug, or other substance or factor that might affect

his actions or judgment in any manner, the Court finds that the

defendant is fully competent and capable of entering an

08:56AM 10  informed plea, that he is aware of the nature of the charge and

the consequences of that plea.

        The Court further finds that the plea of guilty is

knowingly, voluntarily, and intelligently made with a full

understanding of his constitutional rights.  The Court further

08:57AM 15  finds that the plea is supported by an independent factual

basis containing each of the essential elements of the offense.

The Court, therefore, accepts the plea, reserves its decision

on whether to accept the plea agreement, but orders that the

plea be entered.

08:57AM 20      Are we satisfied with the current Presentence

Investigation Report, or does anyone feel it needs to be

updated?  Mr. McNally?

        MR. McNALLY:  Not from the government.  It's

satisfied with the content of the report.

08:57AM 25      THE COURT:  All right.  Ms. Glanton Steele?

| | |
|---|---|
| 1 | MS. GLANTON STEELE:  I agree, Your Honor. |
| 2 | THE COURT:  All right.  Then we will proceed on the |
| 3 | basis of the existing Presentence Investigation Report. |
| 4 | All right.  I understand that the parties have |
| 08:58AM  5 | agreed to a sentencing date of February 8, 2021, at 10:00 a.m.; |
| 6 | is that correct? |
| 7 | MR. McNALLY:  That's correct, Your Honor. |
| 8 | MS. GLANTON STEELE:  Yes, Your Honor. |
| 9 | THE COURT:  All right.  All other dates in this |
| 08:58AM 10 | matter are vacated.  All material witnesses are released. |
| 11 | Counsel are ordered to file their sentencing |
| 12 | position papers in advance of the sentencing hearing. |
| 13 | Mr. Sanchez, you will remain in the custody of the |
| 14 | United States Marshals until the date of sentencing. |
| 08:58AM 15 | Anything further from the government? |
| 16 | MR. McNALLY:  No, Your Honor. |
| 17 | THE COURT:  From the defense? |
| 18 | MS. GLANTON STEELE:  No, Your Honor. |
| 19 | THE COURT:  All right.  Thank you all. |
| 08:58AM 20 | **(Proceedings concluded at 8:58 a.m.)** |
| 21 | --oOo-- |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

```
 1                 CERTIFICATE OF OFFICIAL REPORTER

 2

 3   COUNTY OF LOS ANGELES   )
                             )
 4   STATE OF CALIFORNIA     )

 5              I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

 6   COURT REPORTER, in and for the United States District Court for

 7   the Central District of California, do hereby certify that

 8   pursuant to Section 753, Title 28, United States Code that the

 9   foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   Date:  May 9, 2021

16

17

18

19                             /S/ DEBBIE HINO-SPAAN

20                            Debbie Hino-Spaan, CSR No. 7953
                              Federal Official Court Reporter
21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**